**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 13-42076-CJP |
| JOHN W. PETRALIA, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| JOHN W. PETRALIA, | ) | |
| | ) | |
| Plaintiff | ) | Adversary Proceeding |
| | ) | No. 14-04008-CJP |
| v. | ) | |
| | ) | |
| 145 MARSTON ST., INC. D/B/A | ) | |
| COADY'S GARAGE AND TOWING | ) | |
| SERVICE, COHEN & ASSOCIATES, | ) | |
| P.C. AND NATIONAL CREDIT | ) | |
| ADJUSTERS, LLC, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION**

Defendants 145 Marston St., Inc. d/b/a Coady's Garage and Towing Service ("Coady's")

and Cohen & Associates, P.C. ("C&A") filed a *Combined Motion for Summary Judgment* (Adv.

Doc. No. 97) (the "Motion") seeking judgment in their favor with respect to each of the four

counts contained in the complaint filed by John W. Petralia, a chapter 13 debtor and plaintiff in

this adversary proceeding. Through his complaint (the "Complaint"), Mr. Petralia asserts that the

Defendants' conduct related to the seizure and release of his vehicle violated the automatic stay

provisions of § 362(a) of the Bankruptcy Code (Count I), violated the FDCPA (Count II),

constituted unfair or deceptive acts or practices under chapter 93A, § 9 of the Massachusetts

General Laws (Count III), and entitled him to an award of attorney's fees under each of those

statute (Count IV). National Credit Adjusters, LLC ("NCA," together with Coady's and C&A,

the "Defendants") filed a *Notice of Joinder with Co-Defendants' Motion for Summary Judgment*

(Adv. Doc. No. 104) (the "Joinder"). Mr. Petralia filed an opposition to the Motion (Adv. Doc.

No. 123) (the "Opposition").

The Court held a preliminary hearing on these matters and gave the parties the

opportunity to file further briefs in support of their respective positions regarding the

applicability of § 362(b)(3) of the Bankruptcy Code[1] and M.G.L. ch. 159B, § 6B and the

asserted Fair Debt Collection Practices Act (the "FDCPA") violations related to C&A's alleged

failure to comply with M.G.L. ch. 235, § 34. After further briefing and another hearing, the

Court took the Motion and Joinder under advisement. For the reasons discussed below, the

Motion is granted in part and denied in part. The Court will enter judgment in favor of C&A and

NCA on all Counts against them. Regarding the claims against Coady's, summary judgment is

granted in favor of Coady's as to the FDCPA and ch. 93A claims and granted in favor of Mr.

Petralia as to the § 362(k) claim.

I.     Jurisdiction

Mr. Petralia's § 362(k) claims are core proceedings over which the Court has jurisdiction

pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 201 of the United States District Court

for the District of Massachusetts. The Court has "related to" jurisdiction over the remaining non-

core claims, *see* 28 U.S.C. § 157(c), because in Mr. Petralia's pending chapter 13 case, "the

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

outcome of [these claims] will likely effect [his] bankruptcy estate." *Jackson v. ING Bank, FSB (In re Jackson)*, 545 B.R. 62, 64 (Bankr. D. Mass. 2016). The parties have consented to the Court's entry of final orders in this adversary proceeding.

## II.   Facts

The following facts are undisputed.[2] On or about August 8, 2013, a week before Mr. Petralia filed his chapter 13 petition, Coady's towed Mr. Petralia's 2013 Subaru Imprezza to its facility at the direction of the Essex County Sheriff's Department (the "Sheriff").[3] Coady's stored the vehicle at its facility after the seizure.

The Sheriff seized the vehicle at C&A's request, pursuant to an execution issued by the Haverhill District Court after entry of a default judgment against Mr. Petralia in favor of NCA. C&A represented NCA, a debt buyer that had purchased credit card debt owed by Mr. Petralia, in the state court matter.

Mr. Petralia filed his chapter 13 petition on August 15, 2013. His counsel notified C&A of the pending bankruptcy case at 12:56 p.m. on the day the petition was filed. *See* Affidavit of Jeremy M. Cohen, Esq., Ex. 2 to Motion ("Cohen Aff."), ¶ 16; Affidavit of John Petralia

---

[2] Although the Court need only consider materials in the record *cited by the parties* to determine whether a material fact is disputed, "it may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(1), (3) (emphasis added). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 65(c), the court may . . . consider the fact undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2). "A dispute is genuine if a reasonable factfinder could resolve the point in favor of the non-moving party [and a] fact is material if it could affect the outcome of the suit under governing law." *Daniels v. Agin*, 736 F.3d 70, 78 (1st Cir. 2013) (internal citations and quotations omitted). Because the Defendants failed to file a statement of undisputed facts and Mr. Petralia did not file with the Opposition a concise statement of material facts as to which there exists a genuine issue to be tried, the Court has "made sense of the procedural defalcations by comparing" the parties' versions of material facts found in the record to determine whether any are disputed. *Id.* at 73.

[3] Subsequent to the hearing on the Motion, the plaintiff sought leave to amend the Complaint to add additional defendants, including the Sheriff, which motion was denied.

3

("Petralia Aff."), Ex. 1 to Supplemental Brief of Plaintiff (Adv. Doc. No. 142) ("Petralia Supp. Br."), ¶ 9. Sometime that afternoon, the Sheriff notified Coady's that it could release the vehicle to Mr. Petralia. *See* Affidavit of Francis D. Coady, Ex. 1 to Motion ("Coady Aff."), ¶ 8; Cohen Aff. ¶ 17. After Mr. Petralia paid Coady's $472 in towing and storage fees, Coady's released the vehicle at approximately 4:30 p.m. *See* Coady Aff. ¶¶ 14-16; Petralia Aff. ¶¶ 10, 13-14; Invoice, Ex. F to Opposition. Coady's does not dispute that it received notice of Mr. Petralia's bankruptcy.[4]

III.    Positions of the Parties

A.    The Plaintiff

Mr. Petralia alleges that (i) Coady's violated the automatic stay when it had notice of his bankruptcy filing, but nonetheless retained his vehicle and demanded its fees be paid before releasing the vehicle, (ii) C&A violated the stay by failing to direct Coady's to return the vehicle, and (iii) NCA violated the stay because the actions and liability of C&A are imputed to its client. Mr. Petralia further asserts that Coady's violated the FDCPA because (i) Coady's falsely represented the status of a debt under 15 U.S.C. § 1692e(2)(A)[5]  by failing to release the vehicle

---

[4] Although Coady's originally asserted that it did not have actual or constructive notice of the bankruptcy filing when it accepted payment and released the vehicle, *see* Coady Aff. ¶ 12, Mr. Petralia stated that he and his counsel informed Coady's of his pending bankruptcy case, *see* Petralia Aff. ¶ 9, and Coady's confirmed on the record at the February 17, 2016 hearing that the debtor provided Coady's with verbal notice of the bankruptcy filing prior to its demand for payment.

[5] The Court will not address any claim asserted under § 1692f(1) of the FDCPA (regarding the inability to collect an amount not expressly authorized by agreement or law), because Mr. Petralia did not raise this claim in the Complaint. Rather, he raised it for the first time in the Opposition and later in his supplemental brief. Petralia Supp. Br. 3.

The Court similarly will not address Mr. Petralia's assertion in the Opposition and supplemental brief, but absent from the Complaint, that Coady's violated the FDCPA and ch. 93A by incorrectly charging for ten days' worth of services and storage, instead of eight.

absent payment of storage and towing charges and (ii) Coady's took action it could not legally

take under 15 U.S.C. §§ 1692e(5) and 1692f(6)(A) and (C) because, Mr. Petralia contends, his

vehicle was exempt from seizure under Massachusetts law. Mr. Petralia asserts that C&A and

NCA are liable under the same FDCPA provisions because of agency relationships between the

parties. Finally, Mr. Petralia asserts a ch. 93A claim against Coady's and NCA (but not C&A),

arising from the same acts.

Mr. Petralia seeks actual and punitive damages and attorney's fees under § 362(k) for the

stay violations; $1,000 in actual and statutory damages and reasonable attorney's fees under 15

U.S.C. § 1692k(3) for the FDCPA violations; and double or triple damages and reasonable

attorney's fees under M.G.L. ch. 93, § 9(4) for the ch. 93A violations.

B.   The Defendants

The Defendants move for summary judgment on all counts of the Complaint. Coady's

asserts that it did not violate the automatic stay because its actions are excepted from the stay

under § 362(b)(3) of the Code. Coady's argues that § 362(b)(3) applies because a statutory lien

under M.G.L. ch. 159B, § 6B allowed it to retain possession of the vehicle to maintain perfection

of its lien until the outstanding fees were paid. Because a trustee's rights and powers would be

subject to such acts of perfection under § 546(b), Coady's contends that § 362(b)(3) renders the

automatic stay inapplicable to Coady's actions. C&A and NCA join in this argument.

C&A also asserts that it cannot be held responsible for any violation of the automatic stay

by Coady's because there was no contractual relationship that would make the towing company

the law firm's agent. Rather, C&A asserts that the Sheriff, also not C&A's agent, made an

independent decision to engage Coady's to tow and store Mr. Petralia's vehicle. NCA asserts that

Coady's was not its agent for the same reasons. C&A further asserts that it did not independently violate § 362 because on the same day it learned of Mr. Petralia's bankruptcy filing C&A notified the Sheriff that the vehicle could be released and closed its own collection file.

As to the FDCPA claims, Coady's asserts that it is not a "debt collector" as defined in § 1692a(6)(A) because it was collecting its own debt from Mr. Petralia and was not an agent of C&A or NCA.[6] C&A admits that it is a debt collector under the statute, but states that it did not attempt to collect any debt once it learned of Mr. Petralia's bankruptcy filing. Rather, it notified the Sheriff of the bankruptcy and instructed the Sheriff to release the vehicle. C&A also asserts that there is no violation under § 1962e(5) because Mr. Petralia did not allege that any threat was made. It further argues that it is not liable for any alleged impropriety relating to a pre-seizure determination of Massachusetts exemptions applicable to Mr. Petralia's vehicle because C&A relied on the Sheriff to determine the exemption and that the Sheriff could have requested security from C&A under M.G.L. ch. 235, § 35 to indemnify it, but did not. C&A also asserts that the debtor had a duty to claim any available exemption and failed to do so, referencing M.G.L. ch. 235, §§ 34-36. NCA joins in these arguments.

Regarding the ch. 93A claims, the Defendants posit that there cannot be any per se violations, because they did not engage in any unlawful acts under § 362 or the FDCPA and cannot be held liable for any potential violations of the other Defendants.

Coady's also asserts that it is shielded from liability because the Sheriff is entitled to sovereign immunity under M.G.L. ch. 258, § 10(d) and Coady's was acting as the Sheriff's agent

---

[6] Coady's and C&A also seek to distinguish their actions from "nonjudicial action[s]" covered by 15 U.S.C. § 1692f(6) by asserting that they were judicial in nature because of the judgment and execution NCA obtained.

when it detained Mr. Petralia's vehicle. It asserts that the Court does not have subject matter jurisdiction over the claims against it, because Massachusetts courts must hear all tort claims against governmental entities, including Coady's.

In response to the Defendants' arguments in support of the Motion, Mr. Petralia first asserts that Coady's violated the automatic stay because it is not entitled to a statutory lien under M.G.L. ch. 159B, § 6B. He relies on the interpretation of that statute in *Ford Motor Credit Company v. Doe*, 20 Mass. L. Rep. 715 (Mass. Super. 2006), to assert that Coady's does not have a statutory lien under M.G.L. ch. 159B, § 6B because the towing of Mr. Petralia's vehicle was done with a private, and not a public, purpose.[7] Mr. Petralia also argues that C&A violated the stay because the law firm's records show no effort to ensure an immediate release of his vehicle and, by August 24, 2013, C&A was still unaware if the vehicle had been released.

As to the FDCPA claims, Mr. Petralia asserts that there is no dispute that the vehicle was $13,000 "underwater" and thus, he contends, the vehicle was exempt from seizure. He asserts that C&A is liable for unfair actions under § 1692f of the FDCPA because it had a duty to determine the value of Mr. Petralia's vehicle and applicable exemptions before commencing any seizure and that seizure of the allegedly exempt vehicle was an effort to coerce Mr. Petralia to make a payment instead of an attempt to satisfy the judgment. He contends that C&A has no defense under the FDCPA because during discovery it did not produce evidence of any reasonable policies and procedures in place to prevent a violation. Mr. Petralia advances these same arguments as to Coady's and NCA.

---

[7] He also asserts that any storage costs were owed by the judgment creditor, not the vehicle owner.

Mr. Petralia offers no further argument in support of the ch. 93A claims alleged in the Complaint. He does, however, highlight that Coady's admitted to an agency relationship with the Sheriff in its sovereign immunity defense. He asserts that pursuant to § 106(a), any sovereign immunity defense is abrogated with respect to § 362, as qualified immunity is only available to officials performing discretionary, not ministerial acts, and enforcing a judgment is a ministerial act.

IV.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "If the initial burden is met, the burden shifts to the non-moving party to show that genuine issues of material fact exist. The non-moving party must set forth more than conclusory allegations, improbable inferences or unsupported speculation to establish genuine issues of material fact. Competent evidence is required." *Bartel v. Walsh (In re Bartel)*, 404 B.R. 584, 589 (B.A.P. 1st Cir. 2009) (internal citations omitted).

V.   <u>Discussion</u>

<u>Count I – Violation of the Automatic Stay</u>

Coady's violated the automatic stay when it refused to release Mr. Petralia's vehicle until he paid its outstanding fees because Coady's had no statutory lien under M.G.L. ch. 159B, § 6B that would have made the exception set forth in § 362(b)(3) applicable. Section 362(a) of the Code identifies a number of acts that are subject to an automatic stay once a bankruptcy petition is filed, including:

8

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(3)-(6). Under § 362(b)(3), however, the automatic stay does *not* operate to stay "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." *Id*. at§ 362(b)(3). Section 362(b)(3) is applicable only where there is (1) an act to perfect (2) an interest in property and (3) the perfection-authorizing statute satisfies § 546(b)(1)(A). *See 229 Main St. Ltd. P'ship v. Mass. Dep't Envtl. Prot. (In re 229 Main St.)*, 262 F.3d 1, 4 (1st Cir. 2001).

Section 546(b)(1)(A) provides that "[t]he rights and powers of a trustee . . . are subject to any generally applicable law that—(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A). Thus for § 546(b)(1)(A) to apply, "(1) the creditor must act pursuant to a law of general applicability; (2) that law must allow the creditor to perfect an interest in property; and (3) such perfection must be effective against previously acquired rights in the property." *229 Main St*. at 10.

9

Although M.G.L. ch. 159B, § 6B is a law of general applicability, as it would "apply to cases within and without the bankruptcy sphere," *id.*, it does not apply to Coady's under the facts of this case.

Chapter 159B, section 6B of the Massachusetts General Laws provides that:

> The maximum storage charge for non-commercial passenger motor vehicles with a maximum capacity of nine persons, shall be $35 per twenty-four hour period thereof, when said vehicles have been involuntarily towed or transported pursuant to order of police or other public authority, or pursuant to accident on a public way . . . or when said vehicles have been stolen or misappropriated and their removal from public ways has been ordered by police or other public authority, *or in any other situation where motor vehicles have been involuntarily towed or transported by order of police or other public authority* . . . .
>
> . . . .
>
> The motor vehicle storage facility *shall have a lien* for its proper transportation and storage charges due them for towing, transportation and storage of motor vehicles, pursuant to this section. Said lien may be enforced under the sale provisions of [ch. 255, § 39A].

M.G.L. ch. 159B, § 6B (emphasis added).

It is not disputed that the Sheriff effectuated the involuntary towing of Mr. Petralia's vehicle by Coady's pursuant to an execution C&A obtained from the Haverhill District Court. The issue is whether an execution on a civil judgment delivered to a sheriff is an order issued by the "police or other public authority." *Id.* "An execution is a process issued from a court in which a judgment has been rendered, in a civil action, for the purpose of carrying the judgment into effect." *Miller v. London,* 1 N.E.2d 198, 200 (Mass. 1936). "It constitutes a court order to a sheriff or other authorized officer to seize and sell" the debtor's property. *Mullane v. Chambers*, 333 F.3d 322, 329 (1st Cir. 2003) ; *see also* Mass. R. Civ. P. 69 ("Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise."); *Miller,* 1 N.E.2d at 200 ("The officer is commanded in the execution to cause payment to be

10

made out of property of the debtor."); *Hoar v. Tilden*, 59 N.E. 641 (Mass. 1901) ("[E]xecution

commands the officer to levy upon the goods . . . of the debtor.").

In *Ford Motor Credit v. Doe*, the Massachusetts Superior Court (Agnes, J.) concluded on

similar facts that a towing company did not have a lien under M.G.L. ch. 159B, § 6B. 20 Mass.

L. Rep. 715, 2006 WL 1075586, *2 (Mass. Supp. Mar. 27 2006). The court held that, where a

judgment creditor caused a debtor's vehicle to be towed by deputy sheriffs upon a writ of

execution, "the towing, while effectuated by the public authority of the Sheriff's Department,

was done at the direction of the court pursuant to a default judgment[,]" an action that was, at

base, "privately, not publicly, motivated." *Id.* While the court acknowledged that the sheriff was

a public authority, it distinguished the sheriff's role in effectuating an execution from instances

where a vehicle is towed pursuant to an order of the police or public authority "for safety reasons

such as blocking a fire hydrant or being abandoned on a public way." *Id.* Because the towing

pursuant to an execution was privately and not publicly motivated, M.G.L. ch. 159B, § 6B was

inapplicable. *Id*.

There is no dispute that Mr. Petralia's vehicle was towed under similar circumstances.

The Haverhill District Court issued an execution after a default judgment entered against Mr.

Petralia in favor of NCA and NCA then determined how and when that execution would be

levied. NCA determined that Mr. Petralia's Subaru should be seized by the Sheriff. While the

Sheriff acted under the authority of the execution, he acted for a private purpose at the direction

of NCA through C&A to levy on Mr. Petralia's vehicle, to the extent it was a non-exempt asset,

to satisfy the civil judgment. Under these circumstances, M.G.L. ch. 159B, § 6B does not apply

to create a statutory lien in favor of Coady's. *See Ford Motor Credit*, 2006 WL 1075586 at *2-

11

3.[8]  As such, Coady's did not have a statutory lien that would limit the reach of the automatic

stay in accordance with §§ 362(b)(3) and 546(b)(1)(A).

Without the protection of § 362(b)(3), Coady's actions in refusing to release Mr.

Petralia's vehicle until he paid the outstanding fees constitute a violation of the automatic stay.

As this Court has held:

> Section 362(k)(1) of the Bankruptcy Code provides redress for violations of the automatic stay. It mandates that, subject to exceptions not applicable in this case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." *In re Panek*, 402 B.R. 71, 76 (D. Mass. 2009).
>
> "A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *Laboy v. Doral Mortg. Corp. (In re Laboy)*, 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).

*In re Silk*, 549 B.R. 297, 301 (Bankr. D. Mass. 2016).

---

[8]  Coady's has not offered any contrary authority to and did not effectively distinguish *Ford Motor Credit*. Statutes creating liens that might favor one creditor over another should be strictly construed. *Cf. Golden v. Gen. Builders Supply LLC*, 807 N.E.2d 822, 824 (Mass. 2004) ("Because a mechanic's lien is purely a creation of statute, we have consistently required exact compliance with the statute in order to create, perfect, and enforce such a lien. [The statute] is strictly construed against the party claiming the lien.") (internal citations and quotation marks omitted). In the absence of clarity that M.G.L. ch. 159B, § 6B applies to create a lien in the circumstances of a seizure pursuant to an execution and judgment, the Court adopts the interpretation of the statute in *Ford Motor Credit* and concludes that the Supreme Judicial Court would likely reach the same result if presented with the issue.

Coady's does not dispute that it had actual notice of Mr. Petralia's bankruptcy filing. There is no dispute that Coady's intended to retain Mr. Petralia's vehicle and demanded full payment of its fees before releasing the vehicle. In his affidavit, Mr. Coady states that when Mr. Petralia arrived at the storage facility to pick up his vehicle, Mr. Petralia was informed of and paid the accrued storage and towing fees. *See* Coady Aff. ¶¶ 14-16. A designee for Coady's, James Smalley, similarly confirmed that he gave an invoice of towing fees to Mr. Petralia at that time. *See* Deposition of James Smalley, Ex. 10 to Opposition ("Smalley Dep."), 13:10-11. Because Coady's sought to and did collect a debt from Mr. Petralia as a condition to release his vehicle, even though it was aware of Mr. Petralia's pending bankruptcy case, it willfully violated the automatic stay and is liable for damages under § 362(k).

Neither agency principles nor claims of sovereign immunity will shield Coady's from this liability. Coady's has offered no authority for its assertion that sovereign immunity applies to a private towing company engaged by a sheriff to tow and store a third party's vehicle. Moreover, § 106(a)(1) of the Bankruptcy Code provides that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [§ 362]." 11 U.S.C. § 106(a)(1). Subsection 2 provides that "[t]he court may hear and determine any issue arising with respect to the application of such section[] to governmental units." *Id* at § 106(a)(2). Accordingly, summary judgment will enter in favor of Mr. Petralia on his § 362(k) claim against Coady's. *See* Fed. R. Civ. P. 56(f) (allowing the Court to "grant summary judgment for a nonmovant" or "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute").

13

Conversely, C&A and NCA did not violate the automatic stay. Although Mr. Petralia asserts that C&A violated § 362(a) by failing to direct Coady's to return Mr. Petralia's vehicle, it is undisputed that the Sheriff, having been informed that it could release the vehicle, instructed Coady's to do the same. Mr. Cohen stated that, on August 15, 2013, the Sheriff was notified to release the vehicle "contemporaneous to the receipt of the suggestion of bankruptcy from [Mr. Petralia's counsel]." Cohen Aff. ¶ 17.[9] Mr. Coady confirmed that "[o]n the afternoon of August 15, 2013 Coady's received word from the Essex County Sheriff's Office that it was permissible to release the seized vehicle to Mr. Petralia." Coady Aff. ¶ 8. Mr. Petralia's assertion that it was his attorney who contacted the Sheriff and Mr. Petralia's contention that Mr. Cohen's assertions are not reflected in the time records of C&A are insufficient to controvert the inferences reasonably drawn from statements in the affidavit of Mr. Cohen.[10] Because the Sheriff instructed Coady's to release the vehicle upon being contacted "contemporaneous to the receipt" of the notice of bankruptcy, C&A did not violate the automatic stay. There is no liability to impute to C&A's client, NCA. Thus, summary judgment will enter in favor of C&A and NCA on the § 362(k) claims.

<u>Count II – FDCPA Violations</u>

Summary judgment will enter in favor of Coady's on the FDCPA claims because it is not a "debt collector" as defined in § 1692a(6) of that statute. Section 1692a(6) provides in part that:

---

[9] Cohen also notes that C&A closed its case file the same day it was notified of Mr. Petralia's bankruptcy. Cohen Aff. ¶ 22.

[10] Even if the Court determined that there exists a disputed fact as to whether C&A or Mr. Petralia's counsel contacted the Sheriff or who contacted the Sheriff first, the facts are not material on this record given that it is undisputed that at some point during the afternoon of August 15, 2013, the Sheriff notified Coady's to release the vehicle.

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Coady's was not an agent of C&A or NCA seeking to collect the underlying debt to NCA. It is a towing company that acted to collect its own $472 debt for towing and storage fees incurred. As a result, Coady's cannot be held liable under the FDCPA for falsely representing the status of a debt under § 1692e(2)(A) or taking action it could not legally take under §§ 1692e(5) and 1692f(6)(A) and (C).[11]

---

[11] Section 1692e of the FDCPA provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>     . . . .
>
> (2) The false representation of—(A) the character, amount, or legal status of any debt.
>
>     . . . .
>
> (5)   The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e.

Section 1692f of the FDCPA provides in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>     . . . .
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> (A)   there is no present right to possession of the property claimed as collateral through an enforceable security interest; [or]
>
> (C)   the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f.

By extension, C&A and NCA are not liable under the FDCPA due to any purported

agency relationship with Coady's. Because the Court has held that Coady's did not violate §§

1962e(5) and 1692f(6)(A) and (C), there are no violations to impute to C&A or NCA.

Although Mr. Petralia also asserts that C&A directly violated the FDCPA[12] by

improperly seizing his exempt vehicle to satisfy NCA's debt, that claim is not supported by this

record.

Massachusetts General Laws ch. 235, § 34 provides for certain exemptions from seizure

on execution, including:

> "An automobile necessary for the debtor's personal transportation or to secure or
> maintain employment, not exceeding $7,500 of wholesale resale value; provided,
> however, that the equitable value of a vehicle owned or substantially used by debtor
> who is either a handicapped person or a person 60 years of age or older shall be
> exempt up to $15,000 in wholesale resale value."

M.G.L. ch. 235, § 34. Assuming Mr. Petralia's use or ownership of the Subaru satisfied the

requirements of § 34, Mr. Petralia was entitled to, at most, an exemption of $15,000 in his

vehicle. It is not disputed that the vehicle was subject to liens of record that appeared to exceed

its value. Mr. Petralia asserts in the Complaint and his affidavit that when the vehicle was seized,

it was valued at $15,249 and encumbered by an auto loan with a $28,655 balance. *See* Petralia

Aff. ¶ 6. However, because the vehicle's value exceeded $15,000, it was not exempt from seizure

under Massachusetts law. *See Jessamey v. Norfolk Fin. Corp.*, 2006 Mass. App. Div. 82, 2006

WL 1211029, *3 (Mass. App. Ct. Apr. 28, 2006) (finding that an "underwater" vehicle (worth

$6,000 and encumbered by $12,500 in debt) seized pursuant to an execution was not exempt

---

[12] C&A admits it is a debt collector under 15 U.S.C. § 1692a(6).

under M.G.L. ch. 235, § 34 because its value exceeded the $700 exemption available in an

earlier version of the statute). Thus neither C&A nor NCA can be held liable under §§ 1962e(5)

or 1692f(6)(A) and (C) for seizing property that was not exempt under Massachusetts law.[13]

      Mr. Petralia also asserts that C&A violated § 1692f of the FDCPA when it requested that

the Sheriff seize Mr. Petralia's vehicle because (i) C&A allegedly failed to do its own diligence

when it relied on the Sheriff to determine the value of Mr. Petralia's vehicle before seizure and

(ii) the seizure was an attempt "to coerce Mr. Petralia to make a payment, rather than use the

vehicle to satisfy the judgment" where "there would have been no funds available for

satisfaction" if the vehicle were sold. Petralia Supp. Br. 5.

      Section 1692f includes eight examples of unfair or unconscionable conduct that violates

the FDCPA, but this list is not exhaustive. 15 U.S.C. § 1692f(1)-(8). Although Mr. Petralia

asserts that C&A's alleged failure to determine the value of his vehicle before seizure would be

unfair or deceptive under 940 CMR 7.07(19) and thus violates § 1692f, that section of the Code

of Massachusetts Regulations provides in relevant part that it is unfair or deceptive for a creditor

---

[13] Contrary to C&A's assertion in its supplemental brief that Mr. Petralia had "to show a timely-filed claim or adjudication of the exemption of the property before he [could] claim it as a legal entitlement" and that Mr. Petralia failed "to assert his rights at law and seek judicial review within the fourteen days preceding auction of the seized vehicle," C&A Supp. Br. 4, [#140], Massachusetts seizure and exemption law is not that clear on the process for seizure or the assertion of an exemption. *See* 48 Mass. Prac. Collection Law § 9:27 (stating that Massachusetts law includes "no specific statutory provision requiring the sheriff (or the creditor) to give notice to the debtor of the time and place set for sale of the seized personal property") and § 9:79 (stating that "it may be argued that the lack of notice to the debtor of [federal and Massachusetts] exemptions and the lack of a procedure by which a debtor can claim that certain property is exempt from seizure render the Massachusetts statutes vulnerable to constitutional attack"). Section 36 of M.G.L. ch. 235 requires only that personal property seized pursuant to an execution be held for at least four days and sold by public auction within 14 days of the seizure, unless the debtor redeems the property or other sections of that chapter apply. M.G.L. ch. 235, § 36. In any event, Mr. Petralia's vehicle was seized on or about August 8, 2013, and his chapter 13 bankruptcy petition was filed on August 15, 2013, so any such fourteen-day period had not passed.

to "[take] possession of or sell[] upon execution property that is exempt from seizure on

execution because its value does not exceed the value for exemption set forth in M.G.L. c. 235, §

34, or the property is otherwise exempt by law from such dispossession or disablement." 940

CMR 7.07(19). The Court has already found that Mr. Petralia's vehicle was not exempt from

seizure because its value exceeded any applicable exemption value. Thus, the seizure cannot be

found to have been unfair under § 1692f due to any violation of 940 CMR 7.07(19).

    As to Mr. Petralia's assertion that C&A failed to satisfy its burden to conduct due

diligence in determining the value of Mr. Petralia's vehicle by relying on the Sheriff, he has not

offered, and the Court has not found, any support for the conclusion that C&A's actions were

unfair or unconscionable under § 1692f. The excerpt of Mr. Cohen's November 12, 2015

deposition testimony attached to the Opposition makes clear that his office typically checks the

Registry of Motor Vehicles and relies on the Sheriff to verify whether there are any lienholders

and applicable exemptions when pursuing a motor vehicle seizure. *See* Deposition of Jeremy M.

Cohen, Ex. 11 to Opposition ("Cohen Dep."), 12:3-10, 13:6-8. This is consistent with a copy of

the letter C&A sent to the Sheriff, in which C&A requests that the Sheriff "verify the lien holder

and . . . commence a seizure of the vehicle . . . keeping in consideration all exemptions provided

by Massachusetts law." Opposition, Ex. C. While reliance on the Sheriff may or may not shield

C&A from liability if it had requested that a vehicle be seized that did not have a value in excess

of the applicable exemption, that is not the case here. In this case, Mr. Petralia concedes that the

value of the vehicle exceeded $15,000, the highest possible amount of a claim exemption.

Without more, the Court will not conclude under these facts that C&A's failure to conduct its

due own diligence as to the vehicle's value rose to "the level of egregious conduct that § 1692f

18

was designed to prevent." *Sullivan v. Credit Control Servs.*, 745 F. Supp. 2d 2, 12-13 (D. Mass. 2010).

Mr. Petralia also alleges that C&A's seizure of Mr. Petralia's vehicle was unfair in violation of § 1692f because it was an attempt "to coerce Mr. Petralia to make a payment, rather than [to] use the vehicle to satisfy the judgment." Petralia Supp. Br. 5. He asserts that even though no funds would have been available to satisfy NCA's judgment if the vehicle was sold, Mr. Petralia was told during an August 8, 2013, phone call he made to C&A that he had to pay $11,000 to get his vehicle back. Petralia Aff. ¶ 7. Relying on these facts and a case from the Massachusetts Court of Appeals, *Koonce v. Aldo Realty Trust*, 392 N.E. 2d 549 (Mass. App. Ct. 1979), Mr. Petralia asserts that the seizure of Mr. Petralia's vehicle was unfair under the FDCPA. In *Koonce*, a constable, hired by a landlord who had obtained an execution for possession of an apartment, removed certain pieces of personal property from the apartment and left "behind a note to the effect that execution for possession would be carried out if the rent were not paid up." *Id.* at 550-51. The court concluded on these facts that that constable and landlord "used the execution as an instrument of persuasion rather than a means of satisfaction" and that the constable's actions "smack[ed] of[] a harassing and coercive kind of debt collecting" prohibited by ch. 93A. *Id.* at 551.

The Court can easily recognize that a creditor with actual knowledge of facts demonstrating that there is no equity in a vehicle, but which nonetheless requests seizure or fails to immediately cause the release of a vehicle that has been seized, could be viewed to have engaged in a coercive act that is unfair or unconscionable in violation of § 1692f—but that is a step further than the facts in the record in this case. At no point has Mr. Petralia alleged or

19

provided any evidence demonstrating that C&A *knew* or reasonably should have concluded that it would not recover any funds if Mr. Petralia's vehicle was seized. Rather, Mr. Petralia merely asserts that "[i]t would be impossible for [C&A] to argue that the vehicle was seized to accomplish satisfaction of judgment because had the vehicle been sold, there would have been no funds available for satisfaction." Petralia Supp. Br. 5. Underlying this statement, however, is Mr. Petralia's mistaken assumption that Massachusetts law required C&A to determine the amount owed on any liens on the vehicle, rather than the vehicle's value in relation to any available exemption, before C&A pursued seizure.

Mr. Petralia has not offered, and the Court has been unable to find, any Massachusetts law or cases interpreting such a law that requires a levying judgment creditor to determine that there is equity in a debtor's vehicle before requesting seizure. Implicit in the *Jessamey* court's interpretation of M.G.L. ch. 235, § 34 is that a creditor does not bear the burden of determining the actual loan balances of liens of record before requesting a seizure upon execution. Furthermore, the undisputed facts show that C&A relied on the Sheriff to seize Mr. Petralia's vehicle, keeping in mind applicable exemptions. There are no facts before the Court on this summary judgment record, disputed or otherwise, that could support a finding that C&A went ahead with the seizure even though C&A knew it would not produce any funds to satisfy NCA's judgment.[14] Absent such facts, the Court will not hold C&A liable under § 1692f of the FDCPA simply because C&A caused Mr. Petralia's vehicle to be seized where the seizure complied with

---

[14] This is not a case like *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1049-51 (S.D. Iowa 2007), where the court refused to dismiss a debtor's claim that a debt collector violated § 1692f when the debt collector garnished the debtor's bank account even though it knew, according to a letter from debtor's counsel and debtor's sworn affidavit, that the account contained only exempt Social Security funds.

applicable Massachusetts law. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore*, LLC, 480

F.3d 470, 475 (7th Cir. 2007) (stating when it affirmed the district court's granting of summary

judgment to a law firm that allegedly violated § 1692f when it served on a bank a citation to

discover assets which caused a debtor's checking account containing exempt Social Security

payment to be frozen for three weeks that "federal judges ought not to use th[e] ambulatory

language [of § 1692f] to displace decisions consciously made by state legislatures and courts

about how judgment creditors collect judgments entered under state law").[15]

The parties do not dispute that Mr. Petralia called C&A to try and get his vehicle back

after he learned that it had been seized. Cohen Aff. ¶ 14-15, Petralia Aff. ¶ 7. During that phone

call, Mr. Petralia offered to pay $800 to settle the debt, but was told "that it fell far below the

minimum settlement percentage requirements" of NCA. Cohen Aff. ¶ 15. Mr. Petralia alleges

that C&A then made an $11,000 payment demand on behalf of NCA. Petralia Aff. ¶ 7.

---

[15] Other federal courts have declined to find a § 1692f violation when debt collection efforts were unsuccessful, but nonetheless in compliance with state law. *See Conteh v. Shamrock Cmty. Ass'n*, 648 F. App'x 377, 380 (4th Cir. 2016) (noting that "[i]n the context of 15 U.S.C. § 1692f, we have found that a debt collector's enforcement of their contractual rights in compliance with state court procedure cannot plausibly be construed as unfair or unconscionable conduct" (internal quotation marks and brackets omitted) and declining to find that judgment creditor filing of a writ of execution and seeking to sell allegedly underwater condominium unit was harassment); *Davis v. Neb. Furniture Mart, Inc.*, 567 Fed. Appx. 640, 643 (10th Cir. 2014) (affirming district court's granting of summary judgment to law firm on debtor's claim that obtaining a bench warrant after debtor failed to make payments on judgment creditor's debt was oppressive, harassing and used as "leverage to collect a debt" when debtor had no funds to pay debt other than unemployment benefits protected from garnishment because "[a]lthough . . . 1692f provide[s] non-exclusive examples of prohibited conduct in connection with the collection of a debt, [the debtor had] failed to cite any authority that lawful actions to collect a judgment are within the reach of the FDCPA"); *Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980 (D. Wis. 2015) (concluding, in the context of an alleged § 1692f violation for an unfair debt collection practice, that a debt collector could not be liable for an FDCPA violation if it used state law garnishment procedures properly); *Wetherelt v. Larsen Law Firm*, 577 F. Supp. 2d 1128, 1133 (D. Mont. 2008) (concluding that plaintiff failed to state a claim under § 1692f when debtor collector levied a writ of execution against debtor's bank account, which was released when the debtor asserted the account contained only exempt Social Security funds, because "[d]efendant followed the procedures provided for under [state] law for obtaining a writ of execution" and thus "a reasonable jury could [not] find Defendant acted unfairly or unconscionably").

Unsatisfied with the settlement negotiations, Mr. Petralia then informed C&A that he intended to file for bankruptcy. Cohen Aff. ¶ 15, Petralia Aff. ¶ 7. There are no facts in the record cited by Mr. Petralia showing that he provided C&A or NCA with evidence that there was no equity in the vehicle, for example by providing loan balance statements that reflected balances that when combined with the statutory exemption exceeded the liquidation value of the vehicle. Absent these facts, C&A must be viewed as having been responding to the debtor's attempt to negotiate a settlement of the amount due. Without more, such actions were not unfair or unconscionable.

Finally, although Mr. Petralia did not direct the Court to certain comments in the NCA history report attached to the Opposition, the Court is aware that the report includes the following: (i) a June 12, 2013 entry stating "This debtor is being difficult to deal with, so Jeremy wanted the sheriff to seize the 2005 GMC," (ii) an August 7, 2013 entry stating "Can we seize the defendants [sic] vehicle, the defendant has been uncooperative," and (iii) an August 8, 2013 entry stating "dco..crying..sd he was going to lose his job.. told him he needed to come up with something..offered 800..told him not enough..sd cant get money from 401k." Although these entries would be problematic if NCA was shown to have had information demonstrating that levying on the vehicle would be fruitless, they do not provide a basis to conclude that there is an issue of disputed fact as to whether C&A or NCA was provided with information from which it should have reasonably concluded that the seized vehicle would result in no recovery for NCA if sold at auction. Summary judgment will thus enter in favor of C&A and NCA on the FDCPA claims.

Count III – Chapter 93A Violations

22

Mr. Petralia did not bring a ch. 93A claim against C&A. His ch. 93A claims against NCA

and Coady's are based on the "already-described, allegedly unlawful acts" outlined in the

Complaint.

Chapter 93A, § 2(a) provides that "[u]nfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L.

ch. 93A, § 2(a). Section 9(1) allows

> [a]ny person, other than a person entitled to bring action under section eleven of
> this chapter, who has been injured by another person's use or employment of any
> method, act or practice declared to be unlawful by section two or any rule or
> regulation issued thereunder . . . may bring an action . . . for damages and such
> equitable relief, including an injunction, as the court deems to be necessary and
> proper.

M.G.L. ch. 93A, § 9(1).[16] Subsection 3 requires the injured person to send "a written demand for

relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice

relied upon and the injury suffered" to the offending party at least 30 days before any such action

is filed. M.G.L. ch. 93A, § 9(3). Although the record does not include copies of demand letters to

NCA or Coady's, neither party disputes that Mr. Petralia's counsel sent such letters on October

18, 2013. *See* Complaint ¶¶ 17, 30. According to Mr. Petralia, he received no reasonable offer of

settlement in response.

The Massachusetts Court of Appeals has held that a ch. 93A claim cannot be brought by

a debtor against a judgment creditor or sheriff effectuating a seizure because "[t]here was no

---

[16] Section 9 "creates a right of action for consumers [and] § 11 . . . allows claims based on unfair or deceptive acts
or practices to be brought by one business entity against another business entity." *Liquor Liab. Joint Underwriting
Ass'n of Mass. v. Great Am. Ins.* 16 Mass. L. Rep. 268 (Mass. Super. Ct. 2003).

conduct of trade or commerce between" the parties. *Cady v. Marcella*, 729 N.E.2d 1125, 1133

(Mass. App. Ct. 2000); *see also Foreign Car Ctr. v. Essex Process Serv.*, 821 N.E.2d 483, 490

(Mass. App. Ct. 2005) (relying on *Cady* to conclude that a judgment debtor could not bring a ch.

93A claim against a sheriff who seized the debtor's vehicle). In so concluding, the *Cady* court

relied on its statement in a prior case that "[n]o commercial relationship ever existed between the

parties; their only contact occurred in the context of this litigation." *Cady*, 729 N.E.2d 1133

(*quoting Arthur D. Little, Inc. v. East Cambridge Sav. Bank*, 625 N.E.2d 1383, 1389 (Mass. App.

Ct. 1994)).

In the present case, the judgment debtor, Mr. Petralia, asserts a ch. 93A claim against

Coady's, the towing and storage company. Coady's not only participated in the seizure of Mr.

Petralia's vehicle, but retained possession of the vehicle after Mr. Petralia filed for bankruptcy

and demanded that its fees and charges be paid before the vehicle would be released. *Cf.*

*Andrews v. S. Coast Legal Servs.*, 582 F. Supp. 2d 82, 90 (D. Mass. 2008) (distinguishing *Cady*

and *Foreign Car* because "neither [case] involved claims that the defendants had engaged in

conduct which went beyond seizure"). Assuming that Coady's actions exceeded those of the

judgment creditor and sheriff in *Cady* and *Foreign Car* such that application of ch. 93A would

be appropriate, the Court nonetheless concludes that Coady's did not violate ch. 93A for the

following reasons.

First, because Coady's is not liable for any violation of the FDCPA, Mr. Petralia's argument

that FDCPA violations are *per se* violations of ch. 93A is moot. Second, to the extent Mr.

Petralia asserts that Coady's violated ch. 93A by seizing a vehicle that was exempt from

24

execution, the Court has already concluded that the vehicle was not exempt under M.G.L. c. 235, § 34. And finally, to the extent Mr. Petralia is asserting his ch. 93A claim based on the conduct underlying the stay violation—namely, that Coady's refused to release his vehicle without payment once the bankruptcy case was pending—he has failed to allege or present facts that would support a finding that such action was unfair or deceptive under the Massachusetts statute.

"Chapter 93A liability does not require the violation of a statute, let alone a guideline, to create liability. Conversely, violation of a statute does not automatically give rise to a Chapter 93A claim." *Charest v. Fannie Mae*, 9 F. Supp. 3d 114, 124-25 (D. Mass. 2014) (internal citations and quotations omitted). "The circumstances of each case must be analyzed, and unfairness is to be measured not simply by determining whether particular conduct is lawful (or unlawful, we now add) apart from G.L. c. 93A but also by analyzing the effect of the conduct on the public (or the consumer)." *Hart v. GMAC Mortg. Corp. (In re Hart)*, 246 B.R. 709, 734 (Bankr. D. Mass. 2000) (*quoting Mechanics Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231, 1237).

> Under Chapter 93A, an act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers. To rise to the level of an "unfair" act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature. Under Chapter 93A, an act or practice is deceptive if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.

*Walsh v. TelTech Sys.*, 821 F.3d 155, 160 (1st Cir. 2016) (quotations and citations omitted).

Here, Coady's has asserted that it was entitled to hold Mr. Petralia's vehicle until its towing and storage fees were paid, in spite of the automatic stay, because it had a statutory lien.

25

Coady's was not entitled to such a lien, however, but in light of the language of M.G.L. ch. 159B, § 6B and the dearth of cases applying the statute, the Court does not find that Coady's mistaken reliance on M.G.L. ch. 159B, § 6B constituted an unfair or deceptive under the facts of this case. Mr. Petralia has not offered any legal authority that would support such a conclusion and the record does not reflect that Coady's made unfair or deceptive representations as to the reason it was holding Mr. Petralia's vehicle or that Coady's otherwise engaged in egregious conduct. Rather, the record reflects that Coady's simply held Mr. Petralia's vehicle until its fees and charges were paid, mistakenly believing it had a statutory lien, and, according to Mr. Coady's uncontroverted statement, having been told by the Sheriff "that it was permissible to release the seized vehicle to Mr. Petralia, subject to the statutory and customary towing, and storage fees," Coady Aff. ¶ 8.[17]  There is no 93A violation under these facts, and Mr. Petralia has a remedy under § 362(k).

Finally, Chapter 93A is inapplicable to NCA following the reasoning in *Cady*. NCA was merely the judgment creditor for whom the seizure of Mr. Petralia's vehicle was made. It did not violate the automatic stay, and for the reasons discussed with respect to the analysis of the FDCPA claims, the record does not show that it engaged in any unfair or deceptive practice. Summary judgment will thus enter in favor of NCA on this count.

VI.   <u>Conclusion</u>

---

[17]  Because of this ruling, the Court need not consider whether § 362(k) would preempt chapter 93A.

For the reasons set forth above, the Court grants summary judgment in favor of NCA and C&A on all counts and in favor of Coady's on the FDCPA and ch. 93A claims. Summary judgment is entered in favor of Mr. Petralia as to Coady's violation of the automatic stay. The Court shall schedule further proceedings to determine Coady's liability under § 362(k) for "actual damages, including costs and attorneys' fees" § 362(k). Mr. Petralia claims that he has suffered damages in the form of lost wages, the $472 paid to Coady's, and attorneys' fees. *See* Petralia Supp. Br. 2. He will therefore be given the opportunity to file an affidavit as to the lost wages and attorneys' fees sought. The Court will not award Mr. Petralia punitive damages, however, because Coady's conduct was not egregious for the reasons set forth above. A separate order shall enter consistent with this memorandum.

Dated: September 30, 2016

By the Court,

_____

Christopher J. Panos
United States Bankruptcy Judge